New Yorkers For Religious Liberty, Inc. v. The City of New York Mr. Bursch? Yes, good morning, Your Honors. John Bursch on behalf of New York City's public servants who have suffered discrimination from the city's unconstitutional religious accommodation policies, I have reserved three minutes for rebuttal. May it please the Court. I will press two primary points this morning. First, the plaintiff public employees have stated a claim and a likelihood of success in at least two ways. A, the city continued to use the stricken standards that this Court invalidated in Kane, treating some religious accommodation requests better than others. B, the citywide panel made individualized exemption decisions in the discretion of each panel member, which Kane subjects to strict concedes that even after it lifts the mandate on this Friday, that plaintiff's back pay and other damages are live. So at a minimum, Kane and Keel must be reinstated and all the consolidated matters remanded. And then as to the injunction, there are multiple problems that will remain even if the city lists the mandate, and I'll just tick off a couple of those. One, there's the continuing threat that the mandate will be reinstated. We learned after we submitted our letter yesterday that the Deputy Mayor said that the mandate and other precautions would continue to be adjusted as needed. We also learned after we- Can I just- Yes. Are you suggesting that a potential threat of the mandate being reinstated, are you suggesting that as irreparable harm? How does that- I'm saying that it does not moot our claim for injunctive relief. That the Supreme Court has recognized in cases like Tandon v. Newsom and the Diocese of Brooklyn, but then there is an ongoing threat that the government could reimpose the same unconstitutional policies that it has revoked in an attempt to moot an injunction request, that the court has full authority to go forward and issue that injunction. So I think, if I may, and I don't want to put words in Judge Lee's mouth, I think what we're hoping for help from you is the distinction between mootness and the idea of whether or not you're suffering an irreparable harm if we don't enter it, right? Because they are, doctrinally, they serve different functions. If we were to agree that it wasn't moot, we could still find for you that there was no irreparable harm, right? Because we could say that all of the injuries that you're alleging are financial and can be dealt with after the fact. Is that- Well, Judge Perez, as we point out in our reply brief on that specific irreparable harm point, all the type of past claims for damages and things that ordinary employment cases involve are not the cases that control here, because we're talking about an ongoing violation of constitutional rights. This Court and the Supreme Court have consistently recognized that when there's an ongoing constitutional violation, that itself is irreparable harm. And that irreparable harm here is inextricably tied with the way that they're now enforcing this mandate's revocation. So a couple things that go to both mootness and to irreparable harm. We learned after 3 p.m. yesterday, when we submitted our letters, that our teacher plaintiffs have now been locked out of their accounts. They've been told that they can reapply for their jobs, but they don't have access to their former supervisors, their model lesson plans, letters of recommendation and reference, all the things that they would need to actually reapply. Can I just pull you back just a second to sort of what was in front of the district court and what was the basis of the complaint? And at that time, I believe the arguments were about, or at least partly about, the idea that the plaintiffs were facing an imminent termination. And so to the extent that there are no- that that has now happened, I mean, the claims and the potential problems you're raising now, are they really part of this lawsuit? Because this question of sort of future issues with the city and future potential employment seems to go beyond what this case was, how this case was argued below. Well, Judge Lee, it's not because of any fault at the time that the pleadings were filed. It's because the city keeps moving the goalposts. At the time that the application, or that the complaint was filed, they were continuing to give city employees the chance to get their jobs back if they would only vaccinate. So that's what the complaint was based on. Then after that, they changed and said, well, if you would only get vaccinated, then you could reapply. That's the same type of constitutional injury that the United States Supreme Court recognized in the Trinity Lutheran case. That was the playground resurfacing case out of Missouri, where simply not being able to apply was the constitutional injury. Now they're saying, well, sure, you can reapply, but we'll lock you out of your account so you can't get access to the resources that you need to do that. In addition, you've got these problem codes in the personnel files. We talk about Appellant Salon at Appendix 151, but something we didn't have room to address in the letter is that when the city puts these problem codes on employees who have been terminated because of their unconstitutional policies, not only do they have this flag in their files, but their fingerprints are sent with that flag to the FBI and the New York Criminal Justice Services. So it impacts their ongoing ability to get employment at other places. So, Mr. Burszta, would you at least concede that the coercion theory of irreparable harm is now passed? Would you even concede that? Because now it's not required? Well, it's difficult to say because the city has not set forth exactly what their reinstatement policy will be. So, for example, will the plaintiffs be forced to sign a waiver in order to reapply for their old jobs? We don't know the answer to that. If they do, then that's a question that would still apply under the LRAP laws. No, but one of your theories of harm, or one of the relief you asked us to grant, was that there would be relief from private employer vaccination mandates, right? Correct. Would you at least concede that that is not on the table anymore? Yes. We would concede that the private employer mandate is gone, but we would not concede that our plaintiffs are still irreparably harmed by their inability to get private sector jobs as a result of these problem codes being placed in their files. Can I just pull you a little bit to the idea? I mean, we've been talking, I think, a little bit about harm and focus, I guess, more on the preliminary injunction aspect of this. But in terms of the merits of the claim and whether or not there, in fact, has been a constitutional violation. Thank you, Judge Lee. And just if I can point you a little bit to, and specifically the concern about these citywide panels that ruled on these religious accommodation requests, what was the problem with those panels? What made either the panels themselves or how they handled this problem act? Because this is, the panels seem to have performed the role that our decision in K-1 instructed them to do. They had new hearings for the affected plaintiffs, and they conducted them, or they were instructed to conduct them in accordance generally with Title VII, that type of thing. So what's the problem with what actually happened here? They were instructed to do that, but they did not do that in two ways. And so I want to split this into two distinct pieces. First, the stricken standards, which this Court struck down in Kane, continue to be applied. So if you were a Christian scientist or another individual who was part of a denomination that had no leader... Can I just, you say that, it's mentioned in the brief, they continue to be applied. But all of the plaintiffs in this case did have the opportunity to go in front of the citywide panel as an alternative. So I don't understand the discussion about the stricken... Let me go deeper, because the ones who went before the citywide panel had an additional burden. They also had to demonstrate that there was, I'm sorry, no undue hardship to the city. And for those who were Christian scientists or other sects that did not have a leader who had publicly endorsed the vaccines, they did not have to demonstrate that there would be no undue hardship. So it was two tracks, and it was inherently unequal. One for Christian scientists and others who didn't have that leader, and another for Catholics or Christians where the panel said, well, that's kind of like the Pope, or for Muslim plaintiffs where there was an imam somewhere that they didn't even follow that said it was okay to take the vaccine. They all had to go through the undue hardship rubric. And so it was a separate but unequal track, even after this court remanded. So that's point number one. Point number two is the problem with discretion. Kane recognized that when the city, in its initial applications, applied religious accommodation standards using unfettered discretion, that was subjected to strict scrutiny. And yet here we have Mr. Eichenholz, the panel architect, conceding that panel members made individualized determinations, reaching their own reasonable conclusions with no objective criteria. Okay. Can I just say on the Eichenholz deposition, I guess a couple of concerns is I don't know that that was part of what you pleaded in the consolidated amended complaint that came subsequent. But the other concern I have is it seems like you're taking parts of what he said out of context in terms of the proceedings that they had, that the citywide panel had. They acknowledged that they were, these panels were conducted by people in accordance with the rules of Title VII. And yes, they do have, they look at the, you know, there are standards and there are factual decisions to be made, but the fact that discretion is being exercised doesn't inherently mean that this is subject to strict scrutiny. The question is, is it being exercised in a way where there's a potential to treat religious explanations less favorably than secular ones? Yes, Judge Lee. There are two questions embedded in that one question there. So let me address those separately. First, we don't need the deposition because we know that there was discretion based on the results of the notes that the panel gave us. If they were applying a single objective standard without discretion, panel members would have all have been in agreement. But we know that the panel members disagreed. Heather Clark at Appendix 274, Wilman Castro 276, Dean Paolillo at Appendix 368 were all examples where that three-member panel reached divergent conclusions, showing that there was discretion that is wholly apart from Mr. Eichenholz's deposition. But more importantly, the panels did not follow this court's instructions to not only follow Title VII, but also New York State and city civil rights laws in at least three ways. First, those local laws and state laws require them to define religion broadly. And yet the panel members consistently rejected people whose beliefs were based on personal prayer as opposed to denominational instruction. Those summaries are at Appendix 273 to 277. Second, those state and local civil rights law that this court required them to follow in the citywide panels cautioned employers not to reject unorthodox beliefs or an applicant's interpretation of his creed. And yet we know at the direction of Mr. Eichenholz, they consistently rejected religious claims based on the use of aborted fetal cell lines being used in the research or the production of vaccines. That's in our reply brief at pages 13 to 14. Finally, those state and local laws prohibit the denial of an applicant simply because their views on religion changed after a conversion. So Curtis Cutler, who we described, I'm sorry, explained at page 19 of our reply brief, he went through a conversion at one point in his life and became a deacon in a church. Before his religious conversion, he took vaccines. After his religious conversion, he didn't take vaccines because of his religious beliefs. And yet the citywide panel said because you used to take the vaccines before your conversion, you're out now. So at every step, the citywide panel was engaged in individualized determination, substantial discretion, and to follow. That is a constitutional problem. Can you point me to or I don't know if you can right off the top of your head, but in your complaint where you specifically alleged that the problem with the citywide panels is that they were not conducted in accordance with what the court instructed in Kane? Well, what we have at page 214 of the appendix, paragraph 792, we talk about their unrestricted discretion, which is definitely not what this court contemplated when it directed the panel to apply objective criteria. In addition, at appendix 220, paragraph 814, the citywide panel was accused of following the same discriminatory practices as the Department of Education arbitrators. We did not have a view inside the so-called black box of what they were doing until there was discovery, but it would be appropriate under Rule 15 to amend the pleadings to include that information that was discovered after the complaint was filed because there's really no dispute about it. I mean, we're talking about the summaries that the panel actually issued, so there's no factual dispute that there were disagreements among panel members. Right, but to the extent that part of what we're doing in looking at a complaint to see whether or not it states claims is assessing it for, okay, here's what the specific problem is, here's the constitutional claim, here's the evidence in support of that, to the extent that some of the in the complaint are fairly general to say that the panels were not conducted in accordance with the Constitution or say they didn't fulfill the law. I mean, those things can be very general, and it almost sounds as if you're saying, well, there's specific information that came later and it's not part of this complaint, but it's okay for us to rely on that. But Judge Lee, I appreciate you giving me the opportunity to address that question specifically. Under Rule 12b-6, we assume the truth of all the allegations in the complaint as pled. So we assume that there was discretion, we assume that there were individualized determinations, we assume that the panels did not follow this Court's instructions to follow state and local civil rights laws. The fact that subsequent evidence bore out those allegations and proved them to be true as a matter of fact is not a reason to dismiss the complaint, but it's a reason to reinstate it and allow these plaintiffs to go forward with their constitutional claims. These plaintiffs are good men and women who had received awards from the fire department, the police department, the Department of Education. They worked through the early part of the pandemic without any issues at all, and they've been treated like social pariahs and frankly dumped on by the city at every single point of this proceeding, right up to yesterday when they were locking them out of their accounts so they couldn't reapply for jobs and alleging that they would still continue to move goalposts on whether future mandates will be reimposed. It would be the height of injustice to take generalized allegations which have been proven true and assume them false for purposes of evaluating a Rule 12b6 motion. All right, thank you. Thank you, Your Honors. Yes, Ms. Paulson. Good morning, Your Honors. May it please the Court. Susan Paulson on behalf of the and denying the preliminary injunctions, and there's even less reason than there was earlier in briefing to reverse that determination now. What the plaintiffs sought was to enjoin the vaccination requirement as to them and restore them to their jobs pending appeal. As of Friday, one half of that relief will have been obtained, and what will be remaining is their request for reinstatement. That relief will not have been obtained for the plaintiffs. The vaccine, correct, the vaccine requirement, correct, has been enforced as to them and they're seeking to enjoin the enforcement which can no longer occur, right, because it has already occurred. It's been almost a year since the vast majority had their employment terminated, and this is their third time coming before the Court seeking injunctive relief. Are they free to seek reinstatement at this point? As of Friday, they will be free to reapply for their jobs, yes, Your Honor. Is it the case that they've been locked out of their accounts so that they can't, you know, submit the information that they would need to submit in order to seek reinstatement? Your Honor, my apologies. The first I've heard of this is from counsel this morning, and I have... You will look into it. Absolutely, I will look into it, Your Honor. It would be wrong, wouldn't it? Yes, Your Honor, that would be problematic. I have absolutely no information. I'm learning of it just now, so... Because, you know, a big part of, you know, the equities of your arguing is that they're free to seek reinstatement, but... Yes, Your Honor. If they're not, then it... I'm not sure all of the legal ramifications, but it suggests a certain dishonesty in the presentation of the case. There's no reason for me to believe that the city is not going to permit these individuals to reapply for their jobs. There have been several of the plaintiffs who got vaccinated and got their jobs back during the process. There have been other individuals... Well, the issue is not whether people who got vaccinated. Sure. It's a question of people who do not get vaccinated. Your Honor, and... And the question also is whether the refusal to get vaccinated would be deemed to be insubordination that would preclude their getting their jobs back. In other words, whether the opportunity for them to get their jobs back is really phony. Sure, Your Honor. There's nothing in the record here that would suggest that, and I don't think there should be a presumption of bad faith on the behalf of the government under these circumstances. The city has decided at this juncture that given the vaccination rates in the city at large and amongst the city employee workforce, that it was going to no longer require vaccination for city employees. There's no reason to assume that they are going to... It was never considered misconduct in the first place to decline vaccination. It was a failure to comply with a condition of employment. There are no... If it was never considered misconduct, then why wouldn't the city policy to reinstate them now that it no longer matters whether they were vaccinated or not? Well, Your Honor, reinstatement implicates any number of things, and many of these and civil service. Pardon me? What is the influence of the civil service? Your Honor, the city is not prepared to automatically reinstate the plaintiffs who declined to comply, who were not in their jobs for a year and a half, and the city, for various operational needs and budgetary reasons, some of these positions may now be permitting the plaintiffs to... It will be permitting the plaintiffs to reapply for positions with the city, and there's nothing to suggest that it won't consider those applications based upon the individual's experience and qualifications for each of those positions. Is it the city's position that it complied with the city and state human rights laws in evaluating individual claims, claims one by one? Yes, Your Honor. The citywide panel was guided by Title VII and the city and state's human rights law. To the extent that the plaintiffs believe that their individual claims were not appropriately evaluated under those standards, they should bring claims in state court under those laws, but they don't state First Amendment violations. It is the city's position that the citywide panel, although it made individualized determinations, and with those individualized determinations, involves some amount of discretion, but that discretion was not a standardless discretion. What do you say to your adversary's argument that the citywide panel deemed insufficient a and that that would not be permitted at least under the city's human rights law? Correct. Your Honor, to my reading of those summaries, the citywide panel did not find that to be the reason. What they found to be the reason is they found the objection to the vaccination not to be religious in nature, and it wasn't because they found it to be an individualized faith or a personal religious belief as opposed to a religious belief emanating from an established religion. It was because they found the objection not to be religious in nature. To the extent that that was, again, an erroneous determination, you know, the remedy there is to bring the Title VII or state or city human rights law claims, but there's nothing in the record Just to take the example of Ms. Clark. The ruling was that it was a scientific objection and not a religious one, because her objection was that the vaccine was a product of, was developed using fetal cell lines, and that does seem to me to be a an exposition of religious doctrine on the part of the citywide panel. If that's the objection, how does the citywide panel get to decide whether that is scientific or religious? Well, Mr. Eichenholz explained in his deposition at pages 252 to 255 of the process by which the panel was looking at objections based upon the use of fetal cell lines, or either a belief that there were fetal cells in the vaccines, or the use of fetal cell lines. And this was not, there was no policy to deny religious accommodation requests because That's like the only basis cited. Pardon me? That seems to be the only basis cited for denying a reinstatement to Ms. Clark. The panel members determined that the objection there was not religious in nature, that it was based on science, and they weren't denying They concluded that Ms. Clark didn't want to be vaccinated because she thought what, that the science was invalid, or that she opposed science? I don't follow that. I mean, it sounds like the objection to the use of fetal cell lines Well, Your Honor is based on religion. Again, Your Honor, and I apologize for not having read her full application again before coming here today and seeing exactly how she articulated her objection, but I would direct the court's attention to those pages of the supplemental appendix where Mr. Eichenholz describes at some length how it evaluated objections that were asserted based upon fetal cell lines, and some of those were connected to the applicant's religious beliefs, and some of those asserted those objections unconnected to their religious beliefs, and each of those objections had to be evaluated individually. So may I ask, though, would you concede that the relevant legal standard for us is whether or not in the claimant's own scheme of things, it was whether or not it was religious in nature? Yes, Your Honor. So even if Judge Jacobs or I think that it wasn't religious, it was scientific, if there was a sincerely held belief that the claimant believed that it was religious in nature, that's what controls? Yes, Your Honor. Okay, can I also ask, with respect to discretion, my understanding of your colleague's argument is that there was a distinction made among religious groups, but is your understanding that there's not actually an issue as to whether or not secular behavior was privileged over religious behavior, and to the extent to which that at least what's outside of the issue is whether or not the government interest was undermined by privileging secular beliefs over religion. So that's one area from your perspective that we don't have to contend with in this case. Correct, Your Honor. Your Honors, again, I would direct this Court's attention to where we are at this stage in the game. The plaintiffs, you know, they sought a preliminary injunction on the allegation that they were confronting First Amendment harms from an ongoing coercion to violate their religious beliefs. The ongoing coercion emanated from two places, in their view, from these last chance opportunities to vaccinate and get their job back, which had expired even before the briefing, but are no longer obviously at issue, and their inability to seek employment from private or public employers due to the vaccination requirement, both of which will no longer be in effect by the end of this week. So they no longer confront the First Amendment harms that they alleged, this ongoing coercion. And in addition, what they're seeking here at this point is reinstatement, which is typically reserved for the end of the case. They're seeking part of the ultimate relief. The extraordinary relief of an injunction is not warranted here at this stage in the litigation, and what remains are really past employment disputes that are best addressed under the state and city human rights laws. Your Honors, Mr. Duarte. So your position would be that if they commenced an action in state court, say Article 78 or whatever, that the proceedings here in federal court, all of these proceedings, would not be an impediment to their assertion of those claims? Well, Your Honor, one of the plaintiffs, in fact, two of the plaintiffs, I believe, have broad proceedings in state court, not raising constitutional claims, raising different challenges to challenging the termination of their employment. Has the city interposed the defense based on prior litigation? No, not based on prior litigation. The issue was decided or will be decided elsewhere. No, Your Honor, they're separate claims. Mr. Schimanti, I apologize if I'm butchering his name a little bit there, brought in Article 78 saying that his termination was arbitrary and capricious, not raising a free exercise claim, and we did not interpose a defense. It says that there were no ascertainable criteria of the city-wide panel and that therefore whatever they were doing was one-off in each case and arbitrary. Were there stated and ascertainable criteria? Yes, Your Honor, the criteria were the guidelines established by Title VII in the state and city human rights law, in addition guided by the guidance that the EEOC published that was cited. Throughout the deposition, they tried to get Mr. Eichenholz to articulate what Title VII requires. He was a 30B6 fact witness and he was not there to explicate on the law. They criticized that and say that there were no standards. He never established any objective standards. There were no bright line rules. That is correct. It was an individualized determination and Mr. Eichenholz explained that there was some measure of discretion, but this was not discretion in the type that happened in the Fulton case, where the commissioner at his sole discretion, not guided by any standards, could make a determination as to a contract word. Here, the discretion was circumscribed by the applicable laws, which Mr. Eichenholz explained that all of the panel members were instructed to apply. They were not instructed on what those laws require, as many of them practiced and were experienced and were selected to be on the panel for the reason that they were familiar with those. I can cite the pages in the supplemental appendix, but really, I encourage the panel. It was a seven-hour deposition and throughout that deposition, it was very clear that the citywide panel was doing its utmost in reviewing 10,000 accommodation requests, appeals of denials of accommodations, to work within the guideposts that have been established by the applicable statutory standards and the guidance provided by the EEOC. That did not result in the same decisions in every case, and as I said earlier, to the extent that any of those decisions may have been in error, those individuals could bring the appropriate statutory claims, but there was, there is nothing that suggests that the citywide panel process and the way in which it was violated above the First Amendment. All right, thank you. Thank you. Thank you, Your Honors. Mr. Bursch, we're trying to do something really hard here, trying to balance a lot of interest, trying to harmonize a bunch of law. I'm hoping that you can articulate in your mind what you think the appropriate standard is for ascertaining whether or not a religious belief is sincerely held and at the same time not opening the floodgates to anybody just using the word religion when it's not sincerely held. Sure. As our briefing explains, the standards under Title VII as well as state and local laws are pretty clear on that, that there is a higher bar to sincerity. So if someone comes in and they've never claimed a religious belief in their entire life, there's no evidence of that, and then all of a sudden they're articulating a newfound religion because they want to get out of something, say in a prison context, then that's an inquiry that can be fairly robust. So can you tell me where is the line between that and someone being skeptical of a belief that has not traditionally embraced the idea of not having vaccinations? So that's one scenario. And somebody from a conversion, where does the line fall on one side and then the other in your mind? Well, I think the law says when someone converts, then you look at their post-conversion beliefs. But as to the more difficult question, what do you do with a belief like the aborted fetal cell lines? And in those situations, you're supposed to defer to the religious believer and what their faith teaches them. But you don't have to do that here because if you look at the Catholic Church, which the city holds up, Pope Francis said it's okay to take the vaccine. Pope Francis also made clear that there are severe moral problems with using aborted fetal cell lines for research and production of vaccines. And it's up to each individual Catholic to determine, using their own conscience, whether that's problematic for them as being complicit in the taking of life. There, it's 100% deference. And that's the main belief that they're rejecting. I would like to briefly correct two misstatements that Ms. Paulson said. She said that the plaintiffs are now free to seek reinstatement. That's not entirely accurate. For example, plaintiffs forced to resign or retire in order to keep their health care benefits, like a New York Fire Department Captain Brendan Fogarty, they're not eligible for reinstatement. That's just categorically wrong. In addition, she says that to the extent there are objections with the way the citywide panel applied state and local civil rights law, those should go back to state court. But that's wrong. This court remanded so that those laws could be followed to correct the free exercise violation that had already happened with respect to the stricken standards. If they didn't follow those standards, which they did not, and I'll touch again on Judge Leanne where you can find these in the complaint, not just in the evidence, then if they did not, then the panel's decision in Kane stands and there continues to be an ongoing free exercise violation. So Judge Lee, appendix 112, paragraphs 139 to 40, it alleges the panel did not follow the civil rights rules that this court instructed in Kane. Appendix 114, paragraph 156, says the panel rejected the personal beliefs of some of the plaintiffs, which violates those very rules. Appendix 125, paragraph 236, that the citywide panel rejected individual guidance from prayer. All of those are problematic. Could you just help me drill down a little on what the claim is that the panel did that was contrary to what was ordered in Kane beyond, I mean, I understand that Kane says that these panels should be conducted in accordance with Title VII and relevant, you know, state and local laws. I'm still trying to figure out what's part of the panel's process didn't comply with that. Well, the process rejected personal beliefs that weren't associated with a denominational teaching. It rejected guidance from prayer. It rejected any reliance on aborted fetal cells being used in the research or creation of vaccines. It did not honor the conversion of people like Curtis Cutler. And then the big one that I really want to focus on is this undue hardship, because this goes to the structural problem. You know, again, just to reiterate, in Kane, this court said that the stricken standards, the one that put Christian scientists and others in this track and Catholics and others on this track over here, two different tracks, was unconstitutional. That was a free exercise violation. After remand, those who were Christian scientists or didn't have a religious leader who said it was okay to have the vaccine just got their exemption, their accommodation. They didn't have to pass code, didn't have to collect $200. Everyone else had to get past this additional undue hardship problem. But doesn't undue hardship is part of the Title VII process, that accommodations are made if it doesn't cause an undue hardship to the employer? And even in Kane, in referencing Title VII, I think in the decision at one point, it talks about the fact of this undue hardship component of that. So that's part of, that is consistent. Assessing undue hardship is consistent with Title VII. But there's two constitutional problems. First, that the plaintiffs in this category, the ones who had to prove undue hardship, were being put to a higher legal burden than those who did not. And so depending on your denomination or, you know, whether you satisfied the original Christian scientists, et cetera, standard or later, you had to have a different burden of proof. So whether Title VII required it or not. But doesn't that get back to the original question I asked, or the question I asked a moment ago, Counselor? Thank you for bringing that up. How do we thread the needle? Yeah, you don't have to thread the needle for two reasons. First, it's an establishment clause violation, not a free exercise violation, to treat one denomination different than another. In addition, while Ms. Paulson is correct that with respect to the secular versus religious discrimination, that what Fulton says and what this court said in Kane is that there's a two-prong step here. And just to make sure that you got this, this is page two of our reply brief. Fulton says a law is not generally applicable for either of two reasons. One is the one, Judge Perez, that you and Ms. Paulson were discussing. Prohibits religious conduct while allowing secular conduct that undermines the government's interest in a similar way. Fine, leave that aside. The other is a mechanism for individualized exemptions, which is exactly what happened here. And now taking that point, and Judge Lee, going back to where we were talking about undue hardship, this is what they did with undue hardship. Appellant Amora Bryan, she's discussed that Appendix 199 of 255, had a remote teaching position, and yet they denied her an undue hardship because they said that she couldn't be in a classroom with kids. Or worse yet, Appellant Heather Clark, she's at Appendix 134, paragraphs 315 to 316. She was denied based on undue hardship because of classroom safety. She's not a teacher. She was working remotely and she wasn't going to classrooms. And so the undue hardship, aside from the higher legal burden that these plaintiffs had to satisfy, was being applied in a rubber stamp way that didn't reflect Title VII, New York law, or local civil rights law. And again, that's not an Article 78 issue, Judge Jacobs, as Ms. Paulson said. It's a constitutional problem because they didn't follow the very rules that this court set down in Kane. All right. If there are no further questions, we ask that you reinstate the Kane and Keel cases and that you grant the injunction with respect to all plaintiffs. Thank you for your time. Thank you. Thank you to both counsel.